UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE WELK,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Hon. Janet T. Neff

Case No. 1:09-cv-885

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.§ 405(g), to review the final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years old at the time of the ALJ's decision. (Tr. 30, 32). She successfully completed high school and worked previously as an apartment cleaner, cook, bartender, and assembler. (Tr. 30, 69).

Plaintiff filed for benefits on September 21, 2006, alleging that she had been disabled since February 1, 2003, due to depression, COPD, ADHD, and low back pain. (Tr. 116-23, 160). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 76-115). On March 17, 2009, Plaintiff appeared before ALJ Timothy Stueve, with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 38-75). In a written decision dated April 2, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 22-32). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's left foot, taken on January 25, 2003, were "negative." (Tr. 342). X-rays of Plaintiff's left foot, taken on January 31, 2003, revealed that the "bones, joints, and soft tissues are normal." (Tr. 341).

3

On April 3, 2003, Plaintiff participated in a stress echocardiographic examination, the results of which revealed "[n]ormal electrocardiographic and echocardiographic response to treadmill exercise without evidence of inducible ischemia." (Tr. 269-71). Plaintiff's "[b]lood pressure response was appropriate" and her "[r]esting echocardiogram is basically normal." (Tr. 271). The doctor concluded that there was "[n]o evidence for pulmonary hypertension." (Tr. 271).

On August 10, 2003, Plaintiff participated in an MRI examination of her right knee, the results of which were "negative" with "no evidence of ligamentous or meniscal tears." (Tr. 272). X-rays of Plaintiff's right knee, taken the same day, were likewise "negative." (Tr. 276).

On September 4, 2003, Plaintiff was examined by Dr. Carlos Marcano at Pine Rest Christian Mental Health Services. (Tr. 253-55). Plaintiff reported that she was experiencing mood swings, nervousness, crying spells, and insomnia. (Tr. 253). Plaintiff reported that she drinks alcohol and smokes marijuana. (Tr. 254). The results of a mental status examination were unremarkable. (Tr. 254). Plaintiff was diagnosed with: (1) major depressive disorder, single episode, moderate; (2) cannabis abuse; and (3) alcohol abuse. (Tr. 254). Her GAF score was rated as 57.[1] (Tr. 254). Dr. Marcano prescribed medication and recommended that Plaintiff participate in psychotherapy. (Tr. 255).

X-rays of Plaintiff's right ankle, taken on October 10, 2003, revealed that the "bones, joints, and soft tissues are normal." (Tr. 333).

On October 22, 2003, Plaintiff reported to Dr. Marcano that "she has been feeling much better." (Tr. 256). Plaintiff reported that she was not experiencing mood swings or sleep

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 57 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

4

difficulties. (Tr. 256). On January 6, 2004, Plaintiff reported to Dr. Marcano that "she has been doing better in terms of her mood." (Tr. 258). On March 8, 2004, Plaintiff reported to Dr. Marcano that she continues to drink alcohol and smoke marijuana. (Tr. 259). On April 21, 2004, Plaintiff reported to Dr. Marcano that her job cleaning houses was "picking up." (Tr. 260). She also reported that she was not experiencing any side effects from her medication. (Tr. 260).

X-rays of Plaintiff's chest, taken on September 16, 2004, revealed "emphysematous configuration which may reflect COPD," but there was no evidence of acute pulmonary disease. (Tr. 331). X-rays of Plaintiff's cervical spine, taken on October 20, 2004, revealed "no evidence of acute fracture or subluxation." (Tr. 366). The report further noted that the "[v]ertebral body heights, alignment, and disc spaces appear well maintained throughout the entire spine." (Tr. 366).

Treatment notes dated November 8, 2004, indicate that Plaintiff "has been off all her psyche meds for several months, she just stopped taking them." (Tr. 301). It was also noted that Plaintiff "has not seen her psychiatrist in six months." (Tr. 301). Plaintiff was prescribed medication to treat her depression and COPD. (Tr. 301). Treatment notes dated November 16, 2004, indicate that Plaintiff's COPD was "significantly improved." (Tr. 299). With respect to Plaintiff's depression, it was reported that Plaintiff was again "receiving therapy" and was "doing significantly better." (Tr. 299).

X-rays of Plaintiff's chest, taken on May 17, 2005, revealed "no significant cardiopulmonary abnormality." (Tr. 290). The following day, Plaintiff participated in a Doppler ultrasound examination of her lower extremities, the results of which were "normal." (Tr. 291). X-rays of Plaintiff's chest, taken on October 22, 2005, revealed "no significant cardiopulmonary abnormality." (Tr. 329).

5

Treatment notes dated November 17, 2005, indicate that Plaintiff was "smoking a lot of crack - daily" for past 18 months. (Tr. 292). On November 23, 2005, Plaintiff entered a Pine Rest treatment program to treat her cocaine dependence. (Tr. 343-57). Plaintiff reported that she had been "using cocain daily since April and weed occasionally." (Tr. 350). Plaintiff, however, discharged herself from the program on December 2, 2005, "prior to completing assessment and development of treatment objectives." (Tr. 343, 356).

X-rays of Plaintiff's chest, taken on April 24, 2006, revealed "mild hyperinflation of the lungs without evidence of an acute infiltrate." (Tr. 381). X-rays of Plaintiff's chest, taken on May 16, 2006, revealed "no acute cardiopulmonary pathology." (Tr. 377). On September 17, 2006, Plaintiff participated in a CT arteriogram examination of her chest, the results of which were "normal." (Tr. 362).

On December 28, 2006, John Gallagher, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 400-13). Determining that Plaintiff suffered from major depressive disorder and cannabis and alcohol abuse, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 401-08 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 410). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 410).

X-rays of Plaintiff's chest, taken on June 27, 2007, revealed "no acute abnormalities." (Tr. 450). Treatment notes dated September 5, 2007, indicate that Plaintiff's COPD/asthma was

"much improved" with medication. (Tr. 426). X-rays of Plaintiff's chest, taken on December 27, 2007, were "normal" with "no evidence of pneumothorax." (Tr. 455).

X-rays of Plaintiff's chest, taken on March 14, 2008, were "stable…without evidence for any acute pulmonary parenchymal process." (Tr. 446). The results of an abdominal ultrasound examination, performed the same day, were "unremarkable." (Tr. 447).

X-rays of Plaintiff's lumbar spine, taken on June 16, 2008, revealed "minimal dextrocurvature with normal lordosis." (Tr. 434). The L5-S1 intervertebral disc space was "mildly narrowed," but there were "no vertebral body fractures or subluxations" and the sacroiliac joints were "intact." (Tr. 434). X-rays of Plaintiff's pelvis and left hip, taken the same day were "normal." (Tr. 434-35). On June 25, 2008, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed degenerative disc disease at L5-S1 that "does not appear to involve any neural elements." (Tr. 432).

On August 4, 2008, Plaintiff completed a report describing her activities. (Tr. 212-19). Plaintiff reported that on a typical day she showers, watches television, and performs "light" housework. (Tr. 212). Plaintiff reported that she prepares her own meals, visits her neighbors, and shops for groceries. (Tr. 214-16). Plaintiff reported that her hobbies include crocheting, knitting, playing cards, attending movies, and camping. (Tr. 216).

On December 10, 2008, Plaintiff was examined by Dr. Wael Berjaoui. (Tr. 498-99). Plaintiff reported experiencing shortness of breath on exertion, wheezing, and chronic cough. (Tr. 498). Plaintiff reported that she used to take Advair which "controlled her symptoms well." (Tr. 498). Plaintiff indicated that she discontinued this medication when she lost her insurance, but noted that she now "has her insurance back." (Tr. 498). An examination of Plaintiff's lungs revealed

"good air entry bilaterally with no crackles and no wheezes" and "[n]o increased work of breathing." (Tr. 499). The results of a recent pulmonary function test revealed "moderate" airflow obstruction. (Tr. 499). Plaintiff was diagnosed with asthma with COPD. (Tr. 499). The doctor noted that Plaintiff's poor symptom control was exacerbated by her previous medication change dictated by her insurance status. (Tr. 499). Plaintiff was prescribed Advair along with other medications. (Tr. 499).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from depression, chronic obstructive pulmonary disease/asthma/emphysema, headaches, degenerative joint disease with left lower extremity neuropathy, anxiety, and drug abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24-26). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 27-32). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration

8

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can occasionally lift 25 pounds and frequently lift 10 pounds; (2) during an 8-hour workday,

---

requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Plaintiff can sit for 6 hours and stand/walk for 6 hours; (3) she requires a sit/stand option; (4) she can occasionally push/pull; (5) she can never climb ramps, stairs, ladders, ropes, or scaffolds; (5) she can never stoop, kneel, crouch, or crawl; (6) she can occasionally engage in bilateral overhead reaching and handling activities; (7) she must avoid concentrated exposure to pulmonary irritants (fumes, odors, dusts, and gases) and workplace hazards such as moving machinery and unprotected heights; and (8) she is limited to simple, routine, and repetitive tasks. (Tr. 27). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

The vocational expert testified that there existed approximately 21,800 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations

notwithstanding. (Tr. 67, 70-71). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

        a.        The ALJ Properly Evaluated the Medical Evidence

On August 12, 2008, Dr. Kristen Kitzsteiner completed a one page form concerning Plaintiff's physical capacities. (Tr. 485). The doctor reported that Plaintiff can "sometimes"[3] sit, stand, walk, and lift up to 25 pounds. (Tr. 485). Dr. Kitzsteiner reported that Plaintiff can "sometimes" grasp, push, pull, and reach overhead, but can "never" bend, squat, crawl, kneel, or climb stairs. (Tr. 485). The doctor reported that Plaintiff "would have severe limitations as to pace and concentration" and requires a sit-stand option. (Tr. 485). The doctor also reported that "[d]ue to her symptoms," Plaintiff "would likely miss 3 days or more of work and be tardy 3 or more days per month." (Tr. 485). The doctor concluded that Plaintiff "is best suited for part-time work, as opposed to full-time work, which would not accommodate her limitations." (Tr. 485). Plaintiff asserts that because Dr. Kitzsteiner was her treating physician the ALJ was obligated to accord controlling weight to her opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-

---

[3] In this context, "sometimes" was defined as "continuously up to 2 hrs. or occasionally up to 6 hrs." (Tr. 485).

supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

While the ALJ found Dr. Kitzsteiner's opinion "helpful in determining [Plaintiff's] functional abilities," he only assigned "some weight" to her opinion. Specifically, the ALJ concluded:

> I assign some weight to [Dr. Kitzsteiner's opinion] and find that it is helpful in determining the claimant's functional abilities. However, I do not accept the physician's proposed conclusions concerning anticipated absences or that the claimant is "best-suited" for part-time work to be at all compelling or convincing. While mention is made of the claimant's shortness of breath and wheezing, the physician did not explain how she arrived specifically at the conclusions she proposed. There was not a formal physical capacities evaluation or other assessment to test claimant's persistence and endurance in completing work tasks. The medical evidence of record shows that this physician treated the claimant in August 2008 and December 2008; thus, this physician is a treating medical source of the claimant beginning no earlier than August 2008. The statement, which appears to have been formulated by claimant's representative, asks rather leading questions. In particular, it seems rather odd to ask the physician to comment on an emphasis on part-time or full-time work (as well as work that would not accommodate limitations) rather than to inquire concerning one's impairments and the objective and other reasons for medically necessary limitations resulting from such impairments.

(Tr. 29-30).

The ALJ's rationale for according limited weight to Dr. Kitzsteiner's opinion is supported by substantial evidence. As the ALJ correctly observed, the doctor failed to articulate the basis or rationale for her opinion, but instead simply offered unsubstantiated conclusions that are contradicted by the evidence of record.

In support of her position, Plaintiff places great reliance on a recent Sixth Circuit decision, *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009). In that case, the ALJ failed to accord controlling weight to the opinion expressed by the claimant's treating physician. *Id.* At 264-65. The district court found that there existed substantial evidence to support this assessment. *Id.* At 266.

The Sixth Circuit reversed, however, on the ground that the ALJ failed to properly assess the treating physician's opinion. As the court observed:

> The only stated reason the administrative judge gave for rejecting the treating physician's medical opinion that Hensley could not engage in repetitive pushing and pulling was that another physician had reached the opposite conclusion. That was not an adequate basis for rejecting Dr. Cross' opinion.

*Id.*

The Court fails to discern the applicability of the *Hensley* decision to the present matter as the ALJ in this case did not commit the error identified therein. The ALJ did not reject Dr. Kitzsteiner's opinion on the ground that another care provider had articulated a differing opinion. Instead, as required by the legal standard articulated above, the ALJ articulated specific reasons why he discounted the doctor's opinion. The ALJ's reasoning is supported by substantial evidence.

Plaintiff also asserts that the ALJ failed to accord sufficient weight to opinions expressed by Richard King, Ed.D. following a one-time consultive examination. On March 13, 2009, Plaintiff participated in a consultive examination conducted by Dr. King. (Tr. 579-86). Plaintiff participated in intellectual testing, the results of which revealed that she possesses a verbal IQ of 80, a performance IQ of 102, and a full-scale IQ of 89. (Tr. 581). Plaintiff participated in the Beck Depression Inventory-2, the results of which indicated "some elevations of significance related to depression." (Tr. 581). Dr. King also noted the presence of "psychosomatic/somatoform pain dynamics." (Tr. 582). Plaintiff was diagnosed with bipolar disorder and pain disorder. (Tr. 583).

The doctor also completed a report regarding Plaintiff's ability to perform certain non-physical work-related activities. (Tr. 584-85). According to Dr. King, Plaintiff experiences no

14

limitations in the ability to follow work rules and only mild limitations in the following areas: (1) relate to co-workers; (2) deal with the public; (3) interact with supervisors; (4) function independently; and (5) maintain personal appearance. (Tr. 584-85). The doctor reported that Plaintiff experiences moderate limitations in the following areas: (1) use judgment; (2) behave in an emotionally stable manner; and (3) relate predictably in social situations. (Tr. 584-85). Dr. King reported that Plaintiff experienced marked limitations in the following areas: (1) deal with work stresses; (2) maintain attention/concentration; and (3) demonstrate reliability. (Tr. 584-85).

The ALJ assigned only "limited weight" to Dr. King's opinions. Specifically, the ALJ concluded:

> I assign limited weight to the opinion statement of single-time evaluating psychologist King in exhibit 29F. The longitudinal record of mental health treatment is remarkably sparse; a single evaluation does not take the place of regular treatment. The medical evidence, including mental status exam findings, does not support a conclusion of listing-level depression or anxiety as Dr. King's opinion would suggest. . .The record of mental health treatment supports a conclusion of limitations of performing basic mental work activities but is not reasonably work-preclusive.

(Tr. 30).

This conclusion is likewise supported by substantial evidence. As the ALJ noted, because Dr. King examined Plaintiff on only a single occasion his opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). Moreover, the medical record does not support the extreme limitations articulated by Dr. King. As the ALJ concluded, while

15

Plaintiff's emotional impairments limit her ability to perform "basic mental work activities" such are not "work-preclusive." In sum, the ALJ's evaluation of the opinions expressed by Dr. Kitzsteiner and Dr. King is supported by substantial evidence.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 21,800 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

c. Plaintiff does not Satisfy the Grids

Finally, Plaintiff asserts that she should be found disabled pursuant to the medical-vocational guidelines. The guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule

directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00.  In other words, a claimant may be awarded benefits if she satisfies the requirements of one of the particular rules correlating to a finding of disability.  *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff asserts that she is disabled pursuant to Rule 201.10 of the grids.  This particular rule, however, applies only to claimants that are limited to the performance of sedentary work.  As the ALJ determined, Plaintiff is capable of performing a range of *light* duty work.  The ALJ's RFC determination is supported by substantial evidence.  Thus, this argument is rejected.

## **CONCLUSION**

For the reasons articulated above, the undersigned concludes that the ALJ's decision adheres to the proper  legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  October 1, 2010                             /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge